# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| In re: | ) | Case No.: 2:05-cv-01521-RLH-GWF |
| | ) | |
| FLAMINGO 55, INC. (consolidate with) | ) | Bk. Appeal Ref. #05-31 |
| VEGAS TOWNHOMES PARTNERS, L.P. | ) | Bk. Case No. BK-S-03-19478 BAM |
| | ) | |
| Debtors, | ) | |
| _____ | ) | |
| | ) | **O R D E R** |
| JOHN SABA & | ) | |
| GREGORY GRANTHAM, | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY S. CORY | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Before the Court is Appellants' **Opening Brief** (#17), filed May 31, 2006, and

Appellants' Appendix (#16), filed May 31, 2006.  The Court has also considered Appellee's

Answering Brief (#18), filed June 14, 2006; Appellee's Supplemental Appendix (#19), filed June

14, 2006;  Appellants' Reply (#25), filed July 10, 2006; and Appellants' Additional Appendix

(#27), filed July 10, 2006.

. . . .

AO 72
(Rev. 8/82)

Also before the Court is Appellants' Request to Augment the Record on Appeal (#26), filed July 10, 2006. The Court has also considered Appellee's Objection to Appellant's Request to Augment the Record on Appeal (#29), filed July 27, 2006. No Reply has been filed.

**BACKGROUND**

This action arises from Appellants John Saba ("Saba") and Gregory Grantham's ("Grantham") (collectively "Appellants") appeal of the United States Bankruptcy Court, District of Nevada's ("Bankruptcy Court") Order granting the Chapter 7 Trustee's Motion for an Order Authorizing Interim Distribution to Unsecured Creditors ("Distribution Order"). The Bankruptcy Court entered the Distribution Order on December 5, 2005, after a hearing was held on November 28, 2005. In the Distribution Order, the Bankruptcy Court authorized an interim distribution to the estate's three unsecured creditors for: (1) $489,500 plus interest to Emerald Gate Construction Co. ("Emerald"); (2) $18,014.91 to Acorn Development, Inc.; and (3) $580 plus interest to Resident Agents of Nevada, Inc. On December 6, 2005, Appellants filed their Notice of Appeal. On December 27, 2005, the appeal was transferred from the Bankruptcy Appellate Panel ("BAP") to this Court.

The facts giving rise to this appeal are as follows. In 1997, Grantham, Saba, Meryvn Phelan, Sr., Meryyn Phelan, Jr. (the "Phelans"), and Craig Brown ("Brown") formed a partnership named Broadway- Acacia, LLC ("B-A"). B-A acquired the real property located at 410 Broadway, Laguna Beach, California ("410 Broadway property"). In 2001, without Grantham and Saba's consent, the Phelans and Brown caused B-A to take out a loan from Datacom Investment Co. ("Datacom"). Some of the loan funds were sent to an escrow account at National Title in Las Vegas, Nevada to purchase a 7 acre parcel of land near Highway 95, Flamingo Road and Viking Road for $1 million ("Las Vegas property"). The Phelans, Brown, and a corporation they controlled named Senior Care, Inc., formed a new corporation named Flamingo 55, Inc., and caused title to the Las Vegas property to record in its name.

1      As security for the $675,000 loan, Datacom received a deed of trust on the 410

2  Broadway property owned by B-A, and a deed of trust on the Las Vegas property owned by

3  Flamingo 55, Inc.  In August 2001, Grantham and Saba discovered the Datacom trust deed on the

4  410 Broadway property and filed a lawsuit in the Superior Court of California, individually and

5  derivatively on behalf of B-A, against the Phelans, Brown, Senior Care, Inc., and other entities. On

6  September 6, 2002, the Superior Court of California entered a default judgment ordering B-A

7  dissolved, and among other things, awarded Grantham and Saba title to the 410 Broadway

8  property.

9      On or about November 12, 2002, Flamingo 55, Inc. transferred title to the Las

10  Vegas Property to Vegas Townhome Properties, Inc. ("Vegas Townhome").  In May 2003, the

11  $675,000 loan from Datacom matured without payment.  As a result, Datacom started non-judicial

12  foreclosure sales on the 410 Broadway property and the Las Vegas property in July 2003.

13      On July 31, 2003, Emerald filed an involuntary petition under Chapter 7 of the

14  Bankruptcy Code against Debtor, Flamingo 55, Inc.  On December 12, 2003, Vegas Townhome

15  Partners, L.P. filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.

16  On March 18, 2004, on motion of Emerald, Vegas Townhome Partners, L.P. was converted from a

17  Chapter 11 case to a Chapter 7 case.  Timothy S. Cory was appointed the Chapter 7 Trustee

18  ("Trustee").  On May 12, 2004, the Chapter 7 cases of Flamingo 55, Inc., and Vegas Townhome

19  Partners, L.P. (collectively the "Debtors") were consolidated.

20      On May 28, 2004, Grantham and Saba filed a motion for relief from the automatic

21  stay to pursue pending lawsuits ("motion for relief").  On June 23, 2004, the Bankruptcy Court

22  denied Grantham and Saba's motion for relief.  On May 7, 2004, Grantham and Saba brought a

23  secured proof of claim asserting that Flamingo 55, Inc. was the alter ego of the judgment debtors

24  in the Superior Court of California action.  The alter ego claim was disallowed by the Bankruptcy

25  Court on November 16, 2004, and that decision was later affirmed by Judge Dawson of this Court.

26  Grantham and Saba filed an appeal to the United States Court of Appeals for the Ninth Circuit.

AO 72
(Rev. 8/82)

On February 1, 2005, Grantham and Saba filed a Complaint against the Trustee ("Complaint") in an adversary proceeding relating, and arising from, the underlying Bankruptcy action.  In that proceeding, Appellants sought declaratory and injunctive relief, and to quiet title as to their ownership interest in the Las Vegas property.  The Trustee responded by filing an answer, and subsequently a motion for summary judgment.  The Bankruptcy Court granted the motion for summary judgment and dismissed the complaint with prejudice.  Granthan and Saba did not file an appeal.

In the Bankruptcy Court, Datacom also moved for relief from the automatic stay to complete its foreclosure on the 410 Broadway property and the Las Vegas property, given as cross-collateral for the loan.  The Bankruptcy Court denied relief from stay as to the Las Vegas property and granted relief from stay to permit Datacom to foreclose on the 410 Broadway property.  On March 5, 2005, Datacom sold the 410 Broadway property at a trustee's sale and received payment of the full outstanding amount of principal, interest, and attorney's fees claimed, of approximately $888,740.91.  As a result of being satisfied through the foreclosure sale, on March 10, 2005, Datacom withdrew its proof of claim in the amount of $843,970.79 against the Debtors.

On June 6, 2005, the Bankruptcy Court entered an order authorizing the Chapter 7 Trustee to sell/auction the Las Vegas property of the Debtors' estate.  The Bankruptcy Court further ordered that the auction be free and clear of all liens and interests with valid liens and interests to attach to the proceeds of the sale/auction.  On or about July 1, 2005, the Las Vegas property was sold for $1.7 million. With the sale proceeds, the Trustee paid all outstanding allowed Chapter 7 administrative claims and allowed secured claims.  On October 20, 2005, the Trustee filed a Motion for an Order Authorizing an Interim Distribution to Unsecured Creditors ("Distribution Motion").

On November 19, 2005, Grantham and Saba filed a proof of claim in the amount of $982,740.91, arguing that their claim replaced the secured claim of Datacom filed on January 28, 2005.  On November 23, 2005, the Trustee filed a preliminary objection to Grantham and Saba's

AO 72
(Rev. 8/82)

proof of claim.  On November 28, 2005, a hearing was held on the Trustee's Distribution Motion.  During the hearing, the Bankruptcy Judge orally ruled that Grantham and Saba's proof of claim was barred by the doctrine of res judicata.  The Bankruptcy Court also found that the amount of funds remaining in the Debtors' estate, after paying unsecured claims, were sufficient to pay any just claims of the estate, thereafter.  On December 5, 2006, the Bankruptcy Court entered an Order granting the Trustee's Distribution Motion.  Grantham and Saba responded by filing a timely notice of appeal.  The Bankruptcy Court's Distribution Order has been stayed pending this appeal.

**Issues Raised on Appeal**

(1) Whether the Bankruptcy Court erred in dismissing Appellants' subrogation claim as barred by the doctrine of res judicata?

(2) Whether the Bankruptcy Court erred in granting the Trustee's Motion in light of Appellants' subrogation claim?

**Standard of Review**

This Court has jurisdiction to hear the instant appeal pursuant to 28 U.S.C. § 158(a)(1).   This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.  *In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995).  Discretionary rulings made pursuant to the Bankruptcy Code are reviewed for an abuse of discretion.  *In re Tran*, 309 B.R. 330, 333 (9th Cir. BAP 2004).  "A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings."  *Id*.  In light of these standards, the Court will apply the de novo standard in determining whether the doctrine of res judicata bars Appellants' subrogation claim.  The Court will then determine whether the Bankruptcy Court abused its discretion in authorizing the interim distribution of the estate's funds to unsecured creditors.

/ / / /

/ / / /

/ / / /

AO 72
(Rev. 8/82)

1                                        **Discussion**

2   **I. Augmentation of Record**

3                  Before the issues presented in this appeal are addressed, the Court must

4   preliminarily dispose of a procedural matter.  Appellants request to augment the record on appeal

5   by adding two documents.  Appellants assert that the first document, which is entitled Motion for

6   Relief from Automatic Stay ("Motion") was filed in the Bankruptcy Court on May 28, 2004.  An

7   exhibit attached to the Motion is a copy of the promissory note made and executed by B-A and

8   Flamingo 55, Inc.  This promissory note, Appellants allege, included an addendum page, which

9   evidenced the signatures of the president and secretary of Flamingo 55, Inc.  The second document

10  Appellants seek to add is their Amended Proof of Claim filed in the Bankruptcy Court on July 3,

11  2006.  Appellants allege they Amended their Proof of Claim to include the signature page

12  addendum of Flamingo 55, Inc. which was missing from their original proof of claim.

13                 While it is true that Rule 8006 of the Federal Rules of Bankruptcy Procedure

14  provides the timetable and procedures for designating the record and issues on appeal from a

15  bankruptcy court ruling,[1] Rule 8006 does not, however, provide a method to correct or modify the

16  record on appeal.  *In re Nat'l Century Fin. Enters., Inc*., 334 B.R. 907, 912-15 (Bankr. S.D. Ohio

17  2005).   In the absence thereof, courts generally apply Rule 10(e) of the Federal Rules of Appellate

18  Procedure.  *Id.* at 915; *In re Tobago Bay Trading Co.*, 142 B.R. 534, 536 (Bankr. N.D. Ga. 1992);

19  *see In re Provan*, 74 B.R. 717, 719 n. 2 (9th Cir. BAP 1987).  Rule 10(e) specifically provides that

20  "[i]f any difference arises about whether the record truly discloses what occurred in the district

21

22  _____

       [1] Rule 8006 of the Federal Rules of Bankruptcy Procedure states, in relevant part:

23
           Within 10 days after filing the notice of appeal . . . the appellant shall file
24         with the clerk and serve on the appellee a designation of the items to be
           included in the record on appeal and a statement of the issues to be presented.
25         Within 10 days after the service of the appellant's statement the appellee may
           file and serve on the appellant a designation of additional items to be included
26         in the record on appeal. . . .

AO 72
(Rev. 8/82)

1    court, the difference must be submitted to and settled by that court and the record conformed

2    accordingly." Fed. R. App. P. 10(e)(1).  The rule further states "[i]f anything material to either

3    party is omitted from or misstated in the record by error or accident, the omission or misstatement

4    may be corrected and a supplemental record may be certified and forwarded: (A) on stipulation of

5    the parties; (B) by the district court before or after the record has been forwarded; or (C) by the

6    court of appeals." Fed. R. App. P. 10(e)(2).  "Rule 10(e) cannot be used to add to or enlarge the

7    record on appeal to include material which was not before the district court." *United States v.*

8    *Walker*, 601 F.2d 1051, 1054 (9th Cir. 1979).

9           In this case, the parties dispute whether the documents, Appellants seek to admit,

10   were actually before the Bankruptcy Court.  Appellants contend that the Motion was before the

11   Bankruptcy Court, and that the Amended Proof of Claim, which included a missing document,

12   was later submitted to the Bankruptcy Court on July 3, 2006.  Appellee, however, contends that

13   neither document was admitted as evidence to the Bankruptcy Court, and as a result, the

14   documents cannot now be added to the record on appeal.  Appellee also notes that the documents

15   should not be added because during Appellants' depositions, neither of the Appellants referred to

16   the alleged signature page by Flamingo 55, Inc.

17          In light of the parties contentions, the Court finds that the Motion that Appellants

18   seek to add to the record on appeal was filed with the Bankruptcy Court on May 28, 2004, well

19   before the Bankruptcy Court entered its Distribution Order on December 5, 2005.  It seems that

20   Appellants seek to add the Motion because the promissory note, attached as an exhibit to the

21   Motion, is completed and includes an addendum page with the signatures of the president and

22   secretary of Flamingo 55, Inc.  The proof of claim filed by Appellants on November 19, 2005,

23   replaced the secured claim of Datacom.  When Datacom filed its proof of claim it attached the

24   promissory note as an exhibit, but failed to include the signature page of Flamingo 55, Inc.  After

25   noting the mistake, Appellants filed their Amended Proof of Claim to include the missing

26   addendum page.

7

AO 72
(Rev. 8/82)

1         Pursuant to Rule 10(e)(2), the Court finds that Appellants mistakenly failed to add

2    the addendum page of the promissory note to the record on appeal.  In reviewing the record below,

3    and the appendixes filed by the parties, the Court is confident that the Motion including the

4    addendum page was before the Bankruptcy Court before it entered its Distribution Order.

5    Although Appellants' Amended Proof of Claim was filed after the Bankruptcy Court entered its

6    Distribution Order, the Court notes that the Amended Proof of Claim only adds the missing

7    addendum page, which was previously submitted to the Bankruptcy Court as an exhibit to

8    Appellants' Motion.   For the reasons stated, the Court grants Appellants' request to augment the

9    record on appeal to include their Motion and Amended Proof of Claim.

10   **II.  Doctrine of Res Judicata**

11        It is well established that the doctrine of res judicata prevents the re-litigation of

12   claims that were or could have been addressed in a prior action. *Owens v. Kaiser Found. Health*

13   *Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001); *Ross v. Int'l Bhd of Elec. Workers,* 634 F.2d 453,

14   457 (9th Cir. 1993).  The doctrine applies if the earlier suit " '(1) involved the same 'claim' or

15   cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved

16   identical parties or privies.' " *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir.

17   2005)(quoting *Sidhu v. Flecto Co.,* 279 F.3d 896, 900 (9th Cir. 2002)).  To determine whether the

18   two suits involve the same claim or cause of action, the court should consider: "(1) whether the

19   two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests

20   established in the prior judgment would be destroyed or impaired by prosecution of the second

21   action; (3) whether the two suits involve infringement of the same right; and (4) whether

22   substantially the same evidence is presented in the two actions." *Mpoyo*, 430 F.3d at 987.

23        The doctrine of res judicata "bars not only all claims that were actually litigated, but

24   also all claims that 'could have been asserted' in the prior action." *Int'l Union of Operating*

25   *Engineers-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d

26   1426, 1430 (9th Cir. 1993).  Claims that 'could have been asserted' are those that exist at the time

AO 72
(Rev. 8/82)

1   the original complaint is filed or are actually asserted by supplemental pleadings.  *See Los Angeles*

2   *Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984)  "The rule

3   that a judgment is conclusive as to every matter that might have been litigated 'does not apply to

4   new rights acquired pending the action which might have been, but which were not, required to be

5   litigated.'"*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th

6   Cir. 1984)(quoting *Kettelle v. Kettelle*, 110 Cal App. 310, 312 (1930)).

7           Appellants argue that their subrogation claim is not barred by the doctrine of res

8   judicata because the material facts supporting their subrogation claim did not exist at the time they

9   filed their Complaint.  In their Complaint, Appellants assert they alleged a partnership or

10   ownership interest in the real property of the estate.  Appellants allege that they alternatively

11   sought a decree that they were entitled to the remedy of a constructive trust or equitable lien on the

12   real property.  These claims, Appellants argue, did not allege a cause of action for subrogation

13   because such a cause of action did not exist at the time their Complaint was filed.  When they filed

14   their Complaint on February 1, 2005, Appellants assert that they had yet to pay the Datacom loan.

15   In fact, Appellants argue that they paid the Datacom loan in full on March 4, 2005, when Datacom

16   foreclosed on the 410 Broadway property owned by Appellants as successors in interest to B-A.

17   Because their right to subrogation arose after the Complaint was filed, Appellants argue their

18   subrogation claim is not barred by res judicata.

19           To the contrary, Appellee argues that the doctrine of res judicata bars Appellants'

20   subrogation claim.  Appellee contends that the facts giving rise to Appellants' subrogation claim

21   are two-fold: (1) that Appellants made payment on the Datacom loan totaling $94,000 between

22   May 2004 and February 2005; and (2) that the foreclosure sale of the California property paid

23   down over $888,000 of the Datacom loan.  Appellee specifically asserts that the following

24   allegations were made in Appellants' Complaint:

25           Alternatively, Grantham and Saba, as successors in interest to [Broadway-
            Acacia, LLC], are entitled to an equitable lien on the [Nevada Property]
26           for repayment of not only the Datacom Investment loan, but for all

1  postponement fees paid to Datacom, for all interest payments made to
   Datacom, for the excess interest and charges on the first deed of trust
2  which have accrued because [Broadway-Acacia, LLC] could not
   re-finance the 1st deed of trust with the Datacom loan of record, and
3  for the time and effort of B-A in seeking a recovery from Flamingo 55,
   all in a sum to be determined at the time of trial but believed to be in
4  excess of $1.3 million.

5      Appellee contends that the foregoing language is clearly broad enough to include

6  the foreclosure of the California property which was pending at the time of the filing of the

7  Complaint.   In opposing the dismissal of their Complaint, Appellee contends that Appellants

8  offered the fact that the California property had been foreclosed in an effort to sustain the

9  Complaint.  Appellee thus argues that the facts supporting the subrogation claim were asserted in

10  the Complaint and supplemental pleadings.  Also, because the Appellants' Complaint was

11  dismissed with prejudice and Appellants failed to appeal the dismissal, Appellee argues that

12  Appellants' subrogation claim is barred by res judicata.

13      In determining whether Appellants' subrogation claim is barred under the doctrine

14  of res judicata, the Court considers whether Appellants' subrogation claim involved the same

15  claim or cause of action previously asserted in their Complaint.  In their subrogation claim,

16  Appellants alleged that as successors in interest to B-A, they were a co-debtor or surety for the

17  Datacom loan and entitled to Datacom's 1st deed position via the right of subrogation.

18  Appellants' subrogation claim sought a total amount of $982,740.91, which reflected the

19  $888,740.91 recovered by Datacom from the foreclosure sale and an additional $94,000 in

20  payments made by Appellants toward the Datacom loan.

21      In their Complaint, Appellants alleged claims for declaratory, injunctive, and quiet

22  title relief as to their interest in the Las Vegas property.  As successors in interest to B-A,

23  Appellants alleged that they were sole owners, or partners with Flamingo 55, Inc. in the ownership

24  of the Las Vegas property because B-A's funds were used to acquire the property.  Under their

25  claim for declaratory relief, Appellants alternatively sought an equitable lien on the Las Vegas

26  property for re-payment of not only the Datacom loan, but also for all postponement fees paid to

AO 72
(Rev. 8/82)

1   Datacom, and, *inter alia*, for all interest payments made to Datacom.  In sum, Appellants requested

2   an amount in excess of $1.3 million.

3   　　　　　In light of the allegations made in Appellants' Complaint and subrogation claim, it

4   is clear that the facts giving rise to both actions are the same.  In both actions, Appellants rely on

5   their status "as successors in interest to B-A" to allege their interest in the Las Vegas property.

6   Because of their status, Appellants alleged their entitlement to either an equitable lien against the

7   Las Vegas property, or their right to subrogate to the rights of Datacom's secured lien against the

8   Las Vegas property.  Thus, in each claim Appellants asserted a lien against the property.  Also, in

9   both situations, Appellants attempted to recover the same relief.  In their subrogation claim,

10  Appellants alleged an amount totaling $982,740.91, including re-payment of the Datacom loan of

11  $888,740.91, and payments made by Appellants post petition of $94,000.  Similarly, in their

12  Complaint, Appellants sought re-payment of the Datacom loan, all postponement fees paid to

13  Datacom, and *inter alia*, all interest payments made to Datacom.  Consequently, Appellants'

14  subrogation claim and Complaint arise out of the same transactional nucleus of facts.

15  　　　　　It is also true that both claims involve the infringement of the same right.  In the

16  Complaint, Appellants alleged their right to an equitable lien against the Las Vegas property to

17  recover re-payment of the Datacom loan, the payments made on the Datacom loan, and the interest

18  payments made to Datacom.  By stepping into the shoes of Datacom, Appellants' subrogation

19  claim asserted a lien on the sale proceeds of the Las Vegas property to recover the amount

20  Datacom received at the foreclosure sale, the payments made by Appellants to Datacom, and any

21  accrued interest.  In bringing both claims, the same evidence would be presented by Appellants.

22  Furthermore, because the Bankruptcy Court has already determined that Appellants' right to an

23  equitable lien did not exist, allowing the Appellants to pursue this right again under a different

24  legal theory would destroy or impair the judgment already rendered by the Bankruptcy Court.

25  　　　　　Although Appellants argue that their subrogation claim was not ripe when their

26  Complaint was filed, the Court finds this argument is without merit.  Section 509(a) of the

AO 72
(Rev. 8/82)

1   Bankruptcy Code establishes that a co-debtor's right of subrogation arises only when and to the

2   extent that the co-debtor pays the assured creditor.  *See* 11 U.S.C. § 509(a).  Thus, it is only when

3   actual payment of all or *part of the claim* is made that the right to subrogation becomes available.

4   *In re Darosa,* 318 B.R. 871, 878-79 (9th Cir. BAP 2004)(emphasis added).  Here, Appellants

5   made five payments toward the Datacom loan before filing their Complaint on February 1, 2005.

6   (Appellants' App. Ex. 10 at 193-195.)  In making these payments, Appellants' right to allege a

7   subrogation claim had arisen.  Thus, Appellants' argument fails.

8          The remaining elements of res judicata are also satisfied.  After reviewing

9   Appellants' Complaint, the Bankruptcy Court issued an order granting summary judgment and

10  dismissing Appellants' Complaint with prejudice.  Appellants did not file an appeal.  The Court

11  notes that a dismissal with prejudice is considered to be a final judgment on the merits. *See*

12  *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002).  Also, because Appellee and

13  Appellants were the parties in both the adversary proceeding and the underlying bankruptcy action,

14  the element of privity is satisfied.

15         Because the Court finds that Appellants' subrogation claim is barred by the doctrine

16  of res judicata, it follows that the Bankruptcy Court did not abuse its discretion in granting the

17  Trustee's Distribution Motion.

18                              **CONCLUSION**

19         Accordingly, and for good cause appearing,

20         IT IS HEREBY ORDERED that the Bankruptcy Court's Distribution Order is

21  AFFIRMED.

22         IT IS FURTHER ORDERED that Appellants' Request to Augment the Record on

23  Appeal (#26) is GRANTED.

24         Dated:   August 15, 2006.

25                                      _____
                                       **ROGER L. HUNT**
26                                     **United States District Judge**